[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiffs, James Delalla and Kathleen M. Barber, bring this appeal following approval by the defendant, Ridgefield Planning and Zoning Commission, of a planned residential development (PRD) subdivision.
The defendant, Basha Szymanska, Trustee, is the owner of a sixty-nine acre tract located between Great Hill Road and Limestone Road, Ridgefield.
Approval was obtained for a subdivision consisting of twenty-two lots.
The defendant submitted the application for a planned residential CT Page 16321 development (PRD) known as "Seven Oaks," on September 5, 2000 (ROR, A-1).
Of the 69.36 acres subject to the subdivision application, 31.3785 acres were designated as proposed open space.
The parcel is located partially in a RA residential (one acre) zone, and partially in a RAA residential (two acre) zone.
Each lot consists of 1.6 acres proposed for single-family dwellings.
The Commission held public hearings concerning the proposal on November 14, 2000 (ROR, C-5); December 19, 2000 (ROR, E-4); January 9, 2001 (ROR, G-4); and January 23, 2001 (ROR, I-3).
The proposal submitted by the applicant exceeded the minimum requirements for open space in a PRD, 36 percent.
Three parcels were proposed as open space parcels, consisting of 3.2785 acres, 8.15 acres, and 19.95 acres.
The proposal received the approval of the Inland Wetlands Agency of the Town of Ridgefield (ROR, B-5), and the Health Department.
The Conservation Commission urged that the open space lands be given to the town for use by the public as walking trails (ROR, C-5, p. 53; ROR, H-3).
At the January 9 public hearing, the possibility of including the open space property within the jurisdiction of the Conservation Commission was explored (ROR, G-4, pp. 290-92).
At that same hearing, the plaintiff, James Delalla, addressed the open space issue, with particular emphasis upon creating a network of interlocking trails for the benefit of the entire Ridgefield community, not simply those individuals who would reside in the proposed planned residential development (PRD) (ROR, G-4, pp. 309-310).
The January 9 discussion further amplified concerns expressed at the November 14, 2000 public hearing.
At that time, it was suggested that the proposed configuration of open space was designed to benefit only future homeowners in the PRD, rather than the entire community (ROR, G-5, p. 122).
Public access to the open space areas set aside in the proposal and CT Page 16322 ownership of the open space parcels also featured prominently in the January 23, 2001 public hearing.
A proposed twenty-five foot strip, forming a corridor or trail for walking, was discussed.
The plaintiff, James Delalla, argued that the strip was inadequate and would not serve as a viable open space connection (ROR, I-3, p. 362).
At its January 30, 2001 meeting, the Commission discussed the creation of a permanent corridor connecting the open space parcels in the PRD.
The town planner indicated his intention to contact the applicant regarding the open space issue (ROR, K-2, p. 374).
The Commission, at that same meeting, voted to approve the designation of the property as a planned residential development (PRD).
The town planner contacted Steven Trinkaus, an engineer engaged by the applicant, concerning the issue of connecting the open space parcels.
Trinkaus responded in a letter dated February 16, 2001 (ROR, M-I, p. 399), which stated that a forty foot strip could be provided along the boundary between proposed Lot #6 and Lot #7.
The planner, Oswald Inglese, read the letter to the Commission at its February 20, 2001 meeting.
The Commission then scheduled a walk of the property.
At its March 13, 2001 meeting, the Commission voted, 5-1, to approve the PRD subdivision with the forty foot corridor as part of the open space.
As a condition of approval, a warranty deed was required, thus permitting the Conservation Commission to establish trails, and vest title and control of the acreage in the Town of Ridgefield.
The approval was noticed in the March 22, 2001 edition of The Ridgefield Press (ROR, N-5, p. 419).
From the approval of the twenty-two lot subdivision for a planned residential development (PRD), the plaintiffs have appealed.
 AGGRIEVEMENT
The plaintiff, Kathleen M. Barber, owns property which lies across the CT Page 16323 street from the parcel which is the subject of the PRD application (Exhibit 1).
She has resided at that address at all times during the course of this appeal.
Section 8-8(1) of the General Statutes defines an "aggrieved person" to include: "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
The plaintiff, James Delalla, presented no testimony on the issue of aggrievement, and a finding of aggrievement cannot be made as to James Delalla.
However, because the plaintiff, Kathleen M. Barber, is statutorily aggrieved, the court has subject matter jurisdiction, even in the absence of a finding of aggrievement by all plaintiffs. Concerned Citizens ofSterling, Inc. v. Connecticut Siting Council, 215 Conn. 474, 479 (1990);Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v.Planning Zoning Commission, 220 Conn. 527, 529 n. 3 (1991).
 BASIS FOR APPEAL
The plaintiffs do not contend that the defendant, Ridgefield Planning and Zoning Commission, in approving the PRD application, acted arbitrarily, illegally, or abused its discretion.
They make no claim that the record fails to provide sufficient evidence to support and uphold the action of the Commission.
The sole ground for appeal is that the letter of February 16, 2001 from Steven D. Trinkaus to Oswald Inglese constituted an impermissibleex-parte communication after the close of the public hearing process.
A party challenging the action of a planning and zoning commission bears the burden of proving that the commission acted arbitrarily or illegally. Burnham v. Planning Zoning Commission, 189 Conn. 261, 266
(1983); Morningside Association v. Planning Zoning Board, 162 Conn. 154,157 (1972).
There is a strong presumption of regularity in the proceedings of the commission. Murach v. Planning Zoning Commission, 196 Conn. 192, 205
(1985).
Courts must be scrupulous not to hamper the legitimate activities of CT Page 16324 civic administrative boards by indulging in a microscopic search for technical infirmities in their actions. Silver Lane Pickle Co. v. ZoningBoard of Appeals, 143 Conn. 316, 319 (1956).
The party challenging the action of a commission based upon the receipt of ex-parte information must first demonstrate that an improper communication has occurred.
Once the improper communication has been established, a reputable presumption of prejudice arises, and the burden of showing that the prohibited exparte communication has not resulted in prejudice is allocated to those seeking to uphold the validity of the commission's decision. Blaker v. Planning Zoning Commission, 212 Conn. 471, 480
(1989); Boris v. Garbo Lobster Co., 58 Conn. App. 29, 38 (2000).
A party seeking to rebut that presumption may submit evidence at trial to show that no prejudice has resulted from the receipt of the information. Robert A. Fuller, Land Use Law and Practice (Second Edition), § 47.4, p. 447.
A commission may not consider evidence submitted by an applicant following the close of a public hearing without guaranteeing the right to opponents to crossexamine witnesses and inspect documents. Pizzola v.Planning Zoning Commission, 167 Conn. 202, 207 (1974).
However, because a municipal land use commission is composed of laymen, it is entitled to obtain technical and legal assistance from staff and advisors possessin the needed expertise. Spero v. Zoning Boardof Appeals, 217 Conn. 435, 444 (1991); Yurdin v. Town Plan ZoningCommission, 145 Conn. 416, 421 (1958).
Therefore, a case-by-case analysis is required in order to determine whether any ex-parte communication was received and whether any prejudice resulted.
 NO IMPROPER EX-PARTE COMMUNICATION WAS RECEIVED
The letter from Steven Trinkaus, dated February 16, 2001, represents a response by the applicant's engineer to a request for technical information.
The letter was not addressed to the Commission, but was communicated to the town planner.
The Town Planner, Oswald Inglese, elected to bring the matter to the attention of the Commission on his own initiative. CT Page 16325
No suggestion is made that the applicant attempted to utilize the planning administrator as a mere conduit in an effort to channel information to the Commission.
The communication concerned a subject which had been thoroughly discussed and analyzed during an exhaustive public hearing process.
Unlike Pizzola v. Planning Zoning Commission, supra, which concerned a traffic study furnished by the applicant to the commission, the letter contained no new information from which the applicant could secure an advantage.
It is, therefore, found that the communication was not an improper ex-parte communication to the Commission by a representative of the applicant.
Dismissal of the appeal is, therefore, warranted on that basis.
However, even if the communication could be construed as an improper,exparte offer of information, the record unambiguously demonstrates that no prejudice to either the aggrieved plaintiff or James Delalla resulted.
The defendants declined to offer additional evidence, believing that the record should speak for itself.
The record unmistakably indicates that the Commission was attempting to respond to issues raised during the public hearing process.
The forty foot strip addressed a specific issue, connecting the open space parcels in a meaningful way, raised by the plaintiff, James Delalla.
The Commission's action was a response to the notion that walking trails should be created and the open space areas should be linked.
Placing the open space areas under the jurisdiction of the Conservation Commission guarantees use of the property by all interested citizens and creates statutory protections in the event that sale or lease of the property to private concerns is ever contemplated.[1]
Including a strip forty feet in width in the final approval has the net effect of increasing the amount of open space dedicated by the defendant's proposal. CT Page 16326
The record easily rebuts any presumption of prejudice which would arise if the communication in question was of an improper, ex-parte nature.
The appeal of the plaintiffs is dismissed.
Radcliffe, J.