[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by Eugene Czako ("Czako") from a decision of the Town of North Haven Inland Wetlands Commission ("commission") approving his application for a permit to conduct a regulated activity, specifically to erect an above-ground pool in his backyard, subject to certain specified conditions. Czako objects to condition 1.a. of the approval granted on July 28, 1999, claiming it to be "improper, unnecessary, unreasonable, arbitrary, and capricious," and imposed with no or inadequate reasons.
The procedural history of this specific application[1] is as follows: On May 27, 1999, Czako filed an application with the commission to conduct a regulated activity and also filed a plan depicting the location of the proposed above-ground pool and wetland mitigation area. (Return of Record ["R.O.R."] 1.) A public hearing was conducted on this application on June 23, 1999. (R.O.R. 3, 6, 7.) The commission conducted its deliberations on the application on July 28, 1999 and voted its approval with conditions on the same date. (R.O.R. 8, 12.) Czako was notified by letter dated August 10, 1999. (R.O.R. 10.) This appeal was filed on August 25, 1999. The specific condition which is the subject of this appeal required that: "The northerly section of the drainage piping in the rear yard must be removed so that the original drainage flow pattern through the wetland area can be re-established. Also, remaining piping must be utilized for connection of roof leaders to preclude water problems at the house foundation." (R.O.R. 8, 10, 12.) The commission did not give any reasons for the imposition of this condition. (R.O.R. 8, 12.)[2]
At all pertinent times, Czako was and is the owner of premises known as 24 Fawn Ridge in North Haven, Connecticut, the subject property. As the owner of the property which is the subject of the commission's decision, Czako is aggrieved. See Huck v. Inland Wetlands Watercourse Agency,203 Conn. 525, 530, 525 A.2d 940 (1987). CT Page 15800
 — I —
The jurisdiction "of an inland wetlands agency is extremely limited in that it can consider only matters that impact on designated wetlands areas." Tanner v. Conservation Commission, 15 Conn. App. 336, 339,544 A.2d 258 (1988). "`[A]n inland wetland agency is limited to considering only environmental matters which impact on inland wetlands.' Judicial review of the administrative process is designed to assure that administrative agencies act in a manner consistent with fundamental fairness. (Internal citations omitted)." Huck v. Inland Wetlands Watercourse Agency, supra, 203 Conn. 552.
In an appeal from a decision of an inland wetlands agency, the plaintiff has the burden of proof and "must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." Sampieri v. Inland Wetlands Agency, 226 Conn. 579, 587,628 A.2d 1286 (1993). As has been stated many times, the "substantial evidence rule" which applies in reviewing a wetlands agency decision is "similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) Id., 226 Conn. 588, citing Huck v. Inland Wetlands Watercourse Agency, supra, 203 Conn. 540-42. The court's role is neither to substitute its decisions regarding the credibility of witnesses for that of the commission nor to redetermine the factual issues. Bradley v.Inland Wetlands Agency, 28 Conn. App. 48, 52, 609 A.2d 1043 (1992). However, when, as here, a commission chooses to rely upon nonrecord information provided by its own technical or professional experts, the reviewing court must determine "whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter." Norooz v. Inland Wetlands Agency,26 Conn. App. 564, 573-73, 602 A.2d 613 (1992). Furthermore, in a case such as this one, where the commission did not state its reasons for imposing condition 1.a., the court simply cannot reverse the decision based on that failure but must "search the record of the hearings before that commission to determine if there is an adequate basis for its decision." Id., 226 Conn. 588-89, quoting Gagnon v. Inland Wetlands Watercourses Commission, 213 Conn. 604, 611, 569 A.2d 1094 (1990).
 — II —
Czako claims, that in imposing condition 1.a., the commission improperly relied on comments made by the town engineer at the deliberation session on July 28, 1999, that these comments were not testimony or evidence upon which the commission could properly rely, and CT Page 15801 that there was no record evidence to contradict the testimony, provided by his experts at the public hearing, which supported a wetlands mitigation plan that did not require the removal of the existing drainage piping in the rear yard. The commission replies that it could rely upon the town engineer's post-hearing comments because they were in the nature of permitted technical and professional assistance, that the comments were simply a reiteration of a recommendation previously made by the engineer in a report to the commission, and that Czako was aware of the engineer's position prior to the public hearing on June 23, 1999.
If the commission were correct that the town engineer's comments on July 28, 1999 were simply a reiteration of his "Review Comments" contained in a document dated June 14, 1999 (R.O.R. 5), the court would have no difficulty denying Czako's appeal. However, the engineer, who was present and participated briefly in the June 23, 1999 public hearing, offered an opinion during the deliberation session on July 28, 1999 that does not appear anywhere else in the record. Specifically, the minutes reflect that the engineer said, "It is my opinion that the pipe that was installed, was installed for a reason and that was to take water away from the area . . . . They have indicated that the pipe has no impact on the wetlands, I disagree with that, if that were the case then why was it there in the first place." (R.O.R. 8, 12).
At the public hearing on June 23, 1999, Czako testified and also presented the testimony of David H. Lord, a certified soil scientist and environmental consultant, and Robert A. Criscuolo, a licensed professional engineer and land surveyor. They testified in support of a proposal that provided for wetlands mitigation without removal of the existing pipe, although they also had prepared an alternative proposal with a swale instead of the pipe which was not discussed extensively.[3]
(R.O.R. 7, pp. 23, 24.) Czako, Criscuolo and Lord testified extensively that the existing drainage pipe had been installed solely for the purpose of collecting surface water which runs off from a neighboring field and floods Czako's backyard during heavy rain, causing severe water problems in his basement, and not to de-water the wetlands.[4] (R.O.R. 7, pp. 8, 9, 10, 13, 16, 17, 19, 32, 33.) Further, these witnesses testified that the area where the drainage pipe was installed was still classified as wetlands (R.O.R. 7, pp. 21, 22, 29, 30.) Moreover, in response to a specific question[5] from one of the commissioners regarding whether the existing pipe would cause long term de-watering or have a hydrological impact, Lord testified, "I don't see how a solid pipe with this configuration . . . will have a de-watering (sic) effect. I don't see . . . any real reason why the pipe . . . would have any draw down effect. I don't see any build up or draw down effect becoming established over a long term period." (R.O.R. 7, pp. 44-45). CT Page 15802
Although the town engineer was present on June 23, 1999 and participated briefly in the public hearing to "get some clarification," he gave no opinion as to the impact of the existing drainage pipe on the wetlands other than to state that the catch basin "runs into the wetland." (R.O.R. 7, pp. 24-26.) A review of the entirety of his statement indicates that he recognized that the purpose of the drainage pipe was to deal with surface water runoff and that Czako was concerned that if the pipe was removed the area would be subjected to flooding.[6]
Thus, in the absence of the opinion rendered by the town engineer during their deliberations on July 28, 1999, the substantial evidence before the commission supported the conclusion that the existing drainage pipe did not de-water the wetlands and that it had been installed solely for the purpose of dealing with the surface water problem which caused Czako's basement to flood. Moreover, the evidence established that the drainage pipe would have no long term impact on the proposed wetlands mitigation and restoration. The court is unable to find any substantial evidence in the record of the public hearing which supports the imposition of condition 1.a.
The purpose of the public hearing is to afford an applicant, and any other interested party, "the opportunity to present and rebut evidence upon which the commission relies in reaching its decision." Grimes v.Conservation Commission, 243 Conn. 266, 278, 703 A.2d 101 (1997). Although the commission clearly could receive technical assistance from the town engineer in connection with its deliberations, if it intended to rely on the town engineer's opinion, that the existing drainage pipe was intended to de-water the wetlands and therefore had to be removed, the commission had an obligation to give Czako notice of its reliance so he had "an opportunity for rebuttal at an appropriate stage in the administrative proceedings." Feinson v. Conservation Commission,180 Conn. 421, 428-29, 429 A.2d 910 (1980); see Palmisano v. ConservationCommission, 27 Conn. App. 543, 548, 608 A.2d 100 (1992).
It is not sufficient to claim, as was argued before the court, that Czako was aware, before the public hearing, that the town engineer had recommended that the existing drainage pipe be removed. (R.O.R. 5.) That may be true, but Czako did not know that the commission intended to rely on the town engineer's opinion that the drainage pipe was installed for the purpose of de-watering the wetlands. Moreover, the questioning by the commissioners at the public hearing did not give Czako any "warning that his evidence was to be entirely discredited; on the contrary, the testimony as transcribed suggests that the evidence was on the whole satisfactory to the commission," Feinson v. Conservation Commission,
supra, 180 Conn. 428, and addressed their concerns regarding wetlands mitigation. Despite ample opportunity for the commissioners to raise CT Page 15803 questions[7] regarding the drainage pipe, they appeared to have had very few questions on that issue and appeared to support Czako's proposal for wetlands mitigation, which did not call for its removal. Thus, the commission's reliance on the town engineer's opinion to impose condition 1.a was fundamentally unfair.[8]
 — III —
Since there is no substantial evidence in the record to support the imposition of condition 1.a. and the commission could not, under the circumstances revealed here, rely on the town engineer's opinion to impose that condition, the court must conclude that the imposition of condition 1.a. was arbitrary, capricious and without substantial evidence.[9] The parties have agreed that if the court reached this conclusion, the court could reform the commission's approval of the application to delete condition 1.a. Accordingly, it is the judgment of the court that the appeal is sustained and the commission is directed to approve the application without condition 1.a.
Linda K. Lager, Judge